IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NELLE JAMISON and JOHN PAUL JAMISON,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>DEPOSITORS INSURANCE COMPANY,<br><br>　　　　　Defendant. | 4:14-CV-3009<br><br>MEMORANDUM AND ORDER |

　　　This matter is before the Court on defendant Depositors Insurance Company's objection (filing 178) to the Magistrate Judge's pretrial order (filing 164). The objection relates to whether the plaintiffs, Nelle and John Paul Jamison, breached a promissory warranty, and whether the defense of a breach of promissory warranty is an issue remaining for trial. The Magistrate Judge found it was not. The Magistrate Judge was correct, and Depositors' objection will be overruled.[1]

BACKGROUND

　　　The dispute is presented through two "Controverted and Unresolved Issues" submitted to the Magistrate Judge in the draft pretrial order: "1. Whether Plaintiffs Breached Promissory Warranty" and "2. Whether the defense of Promissory Warranty is an issue that exists in this case and/or remains for trial." Filing 164 at 3.[2] Depositors argued that "the plaintiff

---

[1] Although the Court's review of a Magistrate Judge's ruling on a nondispositive pretrial matter is ordinarily deferential, *see* 28 U.S.C. § 636(b)(1)(A), the Court views the issue presented here to be effectively dispositive with respect to a defense (or arguably, a counterclaim) that Depositors intended to assert. The Court has, accordingly, reviewed the Magistrate Judge's order *de novo*.

[2] To make sure the record is clear for any reviewing court: the first paragraph on page 3 of the pretrial order, ¶1, was included in the draft presented to the Magistrate Judge. It is in red text, and struck through, because the Magistrate Judge sustained the Jamisons' objection to it. The next paragraph below that, in red but not struck through, was interlineated by the Magistrate Judge to make a record of Depositors' argument regarding that paragraph. The paragraph below that, ¶2 in black, was included in the draft presented to the Magistrate Judge. Below that, in red, the Magistrate Judge sustained the Jamisons'

agreed to not only shut off the water, but initiate a plan to avoid water damage within the property—not through incorporation into the policy itself but as an oral or implied promissory warranty or warranty of intention apart from the language of the policy." Filing 164 at 3. The Jamisons, on the other hand, contended that issue hadn't been raised as a defense in Depositors' answer, or elsewhere, and was resolved in the Court's ruling on summary judgment (filing 136). Filing 164 at 3. The Magistrate Judge agreed with the Jamisons and sustained their objection. Filing 164 at 3.

In ruling on summary judgment, this Court said that:

> As the Court understands the Jamisons' argument . . . they are contending that while the email [containing the alleged promise] might have been a representation made in applying for renewal of the policy, it was not made part of the agreement as a condition subsequent. *See, generally, D & S Realty, Inc. v. Markel Ins. Co.*, 789 N.W.2d 1, 10, 16-17 (Neb. 2010). As best the Court can tell, Depositors has not argued that it was. And Depositors expressly agreed with the Jamisons' factual assertion that the email "was not a part of the actual policy, but a part of the underwriting file," stating that it "agrees the Jamisons' promise to shut off the water was not made part of the policy. Filing 88 at 5; filing 122 at 5. Accordingly, the Court will grant the Jamisons' motion [for summary judgment] on this point and find that the email "did not add a condition to the policy." Filing 126 at 2; *see D & S Realty*, 789 N.W.2d at 9-11, 15-17 (explaining operation of "conditions" in contracts).

Filing 136 at 12. Depositors now argues that "promissory warranties are a separate legal issue which was not addressed by or precluded by the summary judgment ruling." Filing 178 at 1.

## DISCUSSION

Depositors contends that it

> has not claimed that the Jamisons' representation that they would shut off the water to the house while it was unoccupied was a condition that was written into the four corners of the policy. Rather, it was a promissory warranty with which the

---

objection to ¶2, ruling that Depositors' promissory warranty defense is not available. See Filing 164 at 3.

> Jamisons were required to comply, and the breach of which meant that liability did not arise on Depositors' part.

Filing 179 at 2. Depositors asserts that "regardless of whether this representation was made part of the four corners of the policy, it still created an implied warranty or promissory warranty."[3] So, Depositors contends,

> the Summary Judgment Order only found that the representation that the Jamisons would shut off the water was not a condition of the policy. The Order did not preclude a finding that the Jamisons had made a promisorry [sic] warranty, the breach of which meant that the conditions precedent to Depositors' duty to pay were not met. It is this error to which Depositors objects and appeals to the Court for relief.

Filing 179 at 2-3.

The problem with Depositors' argument is, that's not how contracts work. There are, in fact, two problems. First, Depositors' contention that an emailed representation made during negotiation of an insurance policy was somehow incorporated into the agreement, without being incorporated into the written text, is contradicted by basic principles of contract law. Second, even if the promise was somehow made part of the contract, it was a condition subsequent, the alleged breach of which should have been pled if Depositors intended to rely upon it.

### DOCTRINE OF MERGER AND PAROL EVIDENCE RULE

The doctrine of merger is that where prior oral negotiations result in a written contract, all prior negotiations and agreements are deemed merged

---

[3] Depositors' theory of "implied warranty" refers to "certain stipulations, which, from the very nature of the contract, are necessarily embodied in some policies, particularly marine policies, as a part of the policy, and which bind the insured with the same force as if actually expressed in the contract." Filing 179 at 7 (quoting 6 Steven Plitt *et al.*, Couch on Ins. 3d § 81:12 (2016)). The paradigmatic example of an implied warranty in an insurance policy is an implied warranty of seaworthiness in a marine policy. *See* Plitt *et al.*, Couch on Ins. 3d § 99:18; *see also*, *Employers Ins. of Wausau v. Occidental Petroleum Corp.*, 978 F.2d 1422, 1431-36 (5th Cir. 1992); *L & L Marine Serv., Inc. v. Ins. Co. of N. Am.*, 796 F.2d 1032, 1034-36 (8th Cir. 1986). But such warranties are (like their more familiar commercial siblings) implied by operation of law as a matter of public policy. *See Employers Ins. of Wausau*, 978 F.2d at 1433; *see also* 18 Williston on Contracts § 52:67 (4th ed. 2015). Depositors cites no authority, nor is the Court aware of any authority, to support implying a "shut-off-the-water" warranty into a homeowner's insurance policy by operation of law.

therein.[4] *Griffith v. Drew's LLC*, 860 N.W.2d 749, 758 (Neb. 2015); *Beltzer v. Willeford Farms, Inc.*, 337 N.W.2d 406, 408 (Neb. 1983). Similarly, the parol evidence rule states that if negotiations between the parties result in an integrated agreement which is reduced to writing, then, in the absence of fraud, mistake, or ambiguity, the written agreement is the only competent evidence of the contract between them. *Podraza v. New Century Physicians of Nebraska, LLC*, 789 N.W.2d 260, 266 (Neb. 2010); see *Gibbons Ranches, L.L.C. v. Bailey*, 857 N.W.2d 808, 816 (Neb. 2015). This gives legal effect to the contracting parties' intention to make their writing a complete expression of the agreement that they reached, to the exclusion of all prior or contemporaneous negotiations. *Podraza*, 789 N.W.2d at 266.

"[W]here a written contract has been made between the parties, it cannot be altered or contradicted by parol, and that all oral negotiations leading up to the making of the written contract are merged therein." *Whitnack v. Chicago, B. & Q. R. Co.*, 118 N.W. 67, 68 (Neb. 1908). Any or all parts of a transaction prior to or contemporaneous with a writing intended to record them finally are superseded and made legally ineffective by the writing. *Hasenauer v. Durbin*, 346 N.W.2d 695, 698 (Neb. 1984). And there is no sufficient reason in contracts of insurance why a party should be relieved from the duty of exercising the ordinary care and prudence that would be exacted in relation to other contracts. *Gillan v. Equitable Life Assur. Soc.*, 10 N.W.2d 693, 700 (Neb. 1943). So, in the absence of fraud or mistake, all previous verbal agreements are merged in the written contract of insurance, which is conclusively presumed to contain the entire engagement of the parties, with all the conditions of its fulfillment then contemplated. *McLaughlin v. Equitable Life Assur. Soc.*, 57 N.W. 557, 558 (Neb. 1894).[5]

---

[4] Of course, the primary representation at issue here was made by email, but the Court does not view that as a meaningful distinction: it is still extrinsic to the contract.

[5] Depositors argues that Neb. Rev. Stat. § 44-358 recognizes that more than just the policy language may become a warranty, because it provides that:

> No oral or written misrepresentation or warranty made in the negotiation for a contract or policy of insurance by the insured, or in his behalf, shall be deemed material or defeat or avoid the policy, or prevent its attaching, unless such misrepresentation or warranty deceived the company to its injury.

Filing 179 at 6 (citing § 44-358). But that sentence of § 44-358 applies only to warranties made in the negotiations for a contract of insurance, *i.e.*, those that relate to whether the contract is effective. *D & S Realty* 789 N.W.2d at 15. And in any event, an oral contract of insurance is permissible. *See*, *Whitehall v. Commonwealth Cas. Co.*, 248 N.W. 692, 696 (Neb. 1933); *Cline v. Fid. Phenix Fire Ins. Co.*, 203 N.W. 578, 580 (Neb. 1925); see also *Lindsay Ins. Agency v. Mead*, 508 N.W.2d 820, 825-26 (Neb. 1993). Nothing in § 44-358

If a party to a contract can prove that it made a different contract than expressed in the writing, then the remedy is to proceed in equity to have the writing reformed. *See*, *In re Trust Created by Isvik*, 741 N.W.2d 638, 643 (Neb. 2007); *Gillan*, 10 N.W.2d at 700; *see also Cont'l Cas. Co. v. Calinger*, 657 N.W.2d 925, 929-30 (Neb. 2003). But a party cannot ask, in an action at law, to have the policy enforced otherwise than according to its terms: "[t]he court is not at liberty to introduce a short cut to reformation." *Gillan*, 10 N.W.2d at 700; *see Calinger*, 657 N.W.2d at 929-30. A litigant cannot disregard a written contract as evidenced by a policy of insurance and have an action at law upon an alleged oral agreement inconsistent with the policy. *Calinger*, 657 N.W.2d at 929-30. As the Nebraska Supreme Court explained nearly a century ago, rejecting an argument almost identical to Depositors':

> Though it is proper to resort to parol and other extrinsic evidence to explain ambiguities or to interpret written contracts, which are plainly open to explanation or construction, still we think it is stating the rule too broadly . . . to say that when the execution of a written contract, which is complete on its face and certain in its terms, has been induced upon the faith of an oral stipulation, made at the time, such oral stipulation may properly be shown to supplement the writing, and that such oral stipulation may be enforced as a part of the contract, in order to prevent fraud. We do not so understand the rule. The very purpose of putting contracts in writing is to attain complete certainty of obligation and to prevent fraud. The stipulations of oral contracts depend for their proof, not only upon the memory, but largely upon the truthfulness and moral character of the parties bound. Hence, oral contracts give more opportunity for fraud. To allow oral stipulations to be added to written contracts would largely destroy the salutary effect of the parol evidence rule. When fraudulent promises act as the inducement to the execution of a written contract, the remedy is for fraud, and not upon the oral promise as a contractual obligation, for the oral promise as an obligation has become merged in the written agreement and cannot, as such, legally be proved.

*Schuster v. N. Am. Hotel Co.*, 186 N.W. 87, 88 (Neb. 1921).

---

changes the fundamental rule that any oral agreement merges into a subsequent *written* contract of insurance. *See, e.g.*, *Rodine v. Iowa Home Mut. Cas. Co.*, 106 N.W.2d 391, 399-400 (Neb. 1960).

Of course, Depositors did allege fraud, but the Court disposed of that claim on summary judgment. *See* filing 136 at 3-5, 12-14. So, Depositors' remedy would be to plead and prove a claim for reformation of the written instrument. *See*, *Isvik,* 741 N.W.2d at 646, *Johnson v. Stover,* 354 N.W.2d 142, 145 (Neb. 1984). Extrinsic evidence may be admitted in a reformation action to show by parol in what particulars the writing differs from the actual agreement. *Isvik,* 741 N.W.2d at 646. But as the Court has previously explained, Depositors did not plead a counterclaim for reformation, and its motion for leave to amend its pleading to add such a counterclaim was untimely. *See* filing 156 at 6-10. Nor did Depositors plead facts from which such a claim could be inferred. *Compare Lippire v. Eckel,* 134 N.W.2d 802, 807 (Neb. 1965).

In short: Nelle Jamison's emailed promise to shut off the water was not made a part of the written policy, which means that it is not part of the contract, period, and it is not going to be.

### BURDEN TO PLEAD CONDITION SUBSEQUENT

But even if the emailed promise *had* been made part of the contract, there would be another problem: Depositors never pled the alleged breach of that promise as part of its defense. And contrary to what Depositors contends, it should have done so.

Depositors' argument rests on the Nebraska Supreme Court's decision in *Coppi v. W. Am. Ins. Co.*, which Depositors contends "allocated to the insured the burden of proving compliance with a promissory warranty which gave rise to a condition precedent to recovery." 524 N.W.2d 804, 813 (Neb. 1994), *overruled by D & S Realty,* 789 N.W.2d 1. But contrary to Depositors' argument, the Nebraska Supreme Court's subsequent decision in *D & S Realty* overruled *Coppi* on matters that are directly relevant to this case.

The basic question is, for contractual purposes, how do we classify an insured's promise to do something after coverage attaches? *Coppi* characterized the provision at issue in that case as a "promissory warranty which gave rise to a condition precedent to recovery," and said that the burden is on the plaintiff to show the fulfilment of a condition precedent to recovery. 524 N.W.2d at 812-13. But *D & S Realty* expressly criticized *Coppi* for "fail[ing] to recognize that a promissory warranty is a continuing warranty that functions as a condition subsequent for coverage." *D & S Realty,* 789 N.W.2d at 15-16. And, the Nebraska Supreme Court explained:

> Any warranty that must be strictly satisfied will serve as a condition precedent to an insurer's obligation to pay. Warranties are effectively policy stipulations that function as conditions on

> an insurer's obligation to pay a loss. But in insurance law, we believe it is more precise to refer to any condition that must be satisfied after the risk of loss attaches as a "condition subsequent" to distinguish it from a condition precedent to the policy's being effective.

*Id.* at 16. Most important, the Court explained the difference between a condition precedent and a condition subsequent in an insurance policy. A condition precedent relates to whether the risk attaches—that is, to whether the agreement is effective. *Id.* at 11. Conditions subsequent, however,

> are those which pertain to the contract of insurance after the risk has attached and during the existence thereof; that is, those conditions which must be maintained or met after the risk has commenced, in order that the contract may remain in full force and effect. *Clauses which provide that a policy shall become void or its operation defeated or suspended, or the insurer relieved wholly or partially from liability upon the happening of some event, or the doing or omission to do some act, are not conditions precedent, but conditions subsequent and are matters of defense to be pleaded and proved by insurer.*

*Id.* at 11 (quoting 6 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 81:19 at 81-34 (2006)) (emphasis supplied). In other words, the promise to shut off water to the house was plainly a "condition subsequent" as defined by *D & S Realty*, and if Depositors intended to argue that such a condition subsequent was breached, Depositors had the burden to plead and prove it. *See id.* And Depositors did not plead it. *See* filing 5.

In sum: Nelle Jamison's email promising to shut off the water was not incorporated into the parties' agreement, and even if it had been, it would have been a condition subsequent, requiring Depositors to plead and prove that it had been breached in order to rely on it. Breach of that so-called "promissory warranty" is not an issue for trial. Therefore, Depositors' objection will be overruled.

> IT IS ORDERED that Depositors' objection (filing 178) to the Magistrate Judge's pretrial order (filing 164) is overruled.

- 8 -

Dated this 18th day of August, 2016.

BY THE COURT:

*(signature)*

John M. Gerrard
United States District Judge