IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NELLE JAMISON and JOHN PAUL JAMISON,<br><br>            Plaintiffs,<br><br>vs.<br><br>DEPOSITORS INSURANCE COMPANY,<br><br>            Defendant. | 4:14-CV-3009<br><br>ORDER |

This matter is before the Court on motions in limine filed by the plaintiffs (filing 168) and the defendant (filing 171). The plaintiffs' motion will be denied in its entirety, without prejudice to reasserting those objections at trial. The defendant's motion will be granted in part and denied in part, as set forth below.

PLAINTIFFS' MOTION IN LIMINE

1. Vieau Reports

The plaintiffs object to "[t]he Vieau reports dated August 13, 2013 (Trial Ex. 20), and August 28, 2013 (Trial Ex. 22) and any and all opinions contained therein." Filing 168 at 1. "The foundation for this request is that Depositors never had the Vieau letters at the time it made its decision to deny the Jamison's claim. Indeed, the Vieau letters were not received until AFTER Mike Stumberg and Depositors made a conclusive decision that the Jamisons' claim would be denied." Filing 169 at 2.

This objection is overruled, without prejudice to reassertion at trial. In considering whether an insurer acted in bad faith, the Nebraska Supreme Court has looked at the adjustment process as being a series of denials. *See Radecki v. Mut. of Omaha*, 583 N.W.2d 320, 325-27 (Neb. 1998); *see also LeRette v. Am. Med. Sec., Inc.*, 705 N.W.2d 41, 48-49 (Neb. 2005). The issues in this case include whether there was an arguable basis for Depositors' initial denial of coverage *and* whether there continued to be an arguable basis for denial of coverage. The Vieau reports are relevant to the subsequent denial of coverage, and will be admitted, subject to appropriate foundation at trial and either appropriate redaction, or a limiting instruction, or both.

2.      Legal Opinions of Defendant's Counsel

The plaintiffs object to "[t]he legal opinion and any and all legal opinions obtained by Depositors from both in house and outside counsel. Filing 168 at 1. The Jamisons contend that "[n]one of the legal opinions have been produced by Depositors, under claims of attorney client privilege." Filing 169 at 6.

This objection will be <u>overruled</u> without prejudice to reassertion at trial, because it is not clear to the Court at this point what evidence is expected to be adduced. Whether the defendant consulted with counsel regarding the denial of the plaintiffs' insurance coverage may be relevant to the plaintiffs' bad faith claim: while evidence of advice of counsel is insufficient by itself to act as an affirmative defense to a bad faith claim, seeking the advice of counsel may be relevant to such a claim. *Graske v. Auto-Owners Ins. Co.*, 647 F. Supp. 2d 1105, 1110 (D. Neb. 2009).

But generally, using advice of counsel as a defense implicitly waives attorney-client privilege with respect to the communications upon which the defense is based. *See*, *Garcia v. Kids*, No. 8:14CV119, 2016 WL 199413, at *3 (D. Neb. Jan. 15, 2016); *GP Indus., LLC v. Eran Indus., Inc.*, No. 8:06CV50, 2006 WL 3290306, at *3 (D. Neb. Nov. 13, 2006); *see also Sedco Int'l, S. A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir. 1982). "The attorney client privilege cannot be used as both a shield and a sword," and a party cannot claim in its defense that it relied on advice of counsel without permitting the opposing party to explore the substance of that advice. *United States v. Workman*, 138 F.3d 1261, 1264 (8th Cir. 1998); *accord*, *United States v. Beckman*, No. CRIM. 11-228, 2012 WL 1870247, at *1-2 (D. Minn. May 22, 2012); *Sedillos v. Bd. of Educ. of Sch. Dist. No. 1* , 313 F. Supp. 2d 1091, 1093 (D. Colo. 2004). And that principle is implicated when an insurer uses consultation of counsel as evidence that it did not deny coverage in bad faith. *See Lee v. Med. Protective Co.*, 858 F. Supp. 2d 803, 808-09 (E.D. Ky. 2012). As the Maryland Court of Appeals has said in a similar context,

> [W]hat defendants cannot do is defend a charge of bad faith by referencing specific communications with attorneys that purportedly provided a good-faith basis for certain actions, and then refuse to allow any further investigation into those communications. This is because allowing a defendant to make the naked assertion that they consulted with their attorneys leaves the fact finder with the impression that they had shown good faith even in a situation where they had not. Such tactics would allow the defendant to use the attorney-client communication to his benefit and then refuse to answer more

> questions about it. This would be an abuse of the privilege—using it both as a sword and a shield.

*CR-RSC Tower I, LLC v. RSC Tower I, LLC*, 56 A.3d 170, 207 (Md. 2012) (citations, quotations, and emphasis omitted); *see United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991).

But it is not clear, at this point, whether the evidence to be expected at trial will present the defendant's consultation with counsel as a defense in a manner that implicates the attorney-client privilege with respect to the substance of that consultation. Accordingly, the plaintiffs' objection is overruled: the Court will rule on any objections presented at trial, considering the principles set forth above.

DEFENDANT'S MOTION IN LIMINE

1. <u>Use of Insurance Slogans</u>

The defendant objects to "[a]ny statement or argument intended to inflame or arouse feelings of hostility or resentment to Depositors Insurance Company" or "Nationwide Insurance," or "to use any advertising or advertising slogans in a derogatory manner." Filing 171 at 1. The defendant's primary concern, expressed at argument on the motions, is the use of advertising slogans such as Nationwide's in argument to the jury. The plaintiffs represent that they do not intend to make such an argument; therefore, the objection is sustained: the plaintiffs are directed not to make use of the defendant's advertising slogans, or other insurance company advertising.

2. <u>Relative Size and Wealth of Parties</u>

The defendant objects to "[a]ny statement or argument related to the difference in status, size, and strength of the plaintiffs as individuals and Depositors Insurance Company as a corporation." Filing 171 at 1. The plaintiffs do not oppose the objection, so long as it goes both ways, and the defendant also refrains from discussing the plaintiffs' financial resources. On those terms, the objection is sustained: neither party shall refer to the size or wealth of the other party.

3. <u>Prior Rulings of Court</u>

The defendant objects to "[a]ny reference to the prior rulings of the Court in this lawsuit, including as to prior rulings on any of Defendant's affirmative defenses." Filing 171 at 1. The plaintiffs represent that they intend no such reference. Accordingly, the objection is sustained.

4. "Golden Rule"

The defendant objects to "[a]ny statement or argument asking the jurors to place themselves in the position of the plaintiffs and imagine their feelings, motivations, intentions, or emotions." Filing 171 at 2. The objection is sustained: neither party shall make so-called "Golden Rule" arguments. *See United States v. Palma*, 473 F.3d 899, 902 (8th Cir. 2007).

5. "Send a Message" argument

The defendant objects to "[a]ny reference to 'sending a message' to Depositors Insurance Company." Filing 171 at 2. The plaintiffs do not resist the objection, and it is sustained. *See*, *Caudle v. D.C.*, 707 F.3d 354, 361 (D.C. Cir. 2013); *Smith v. Kmart Corp.*, 177 F.3d 19, 26-27 (1st Cir. 1999).

6. Surprise Evidence as to Source of Water

The defendant objects to "[a]ny evidence regarding the source of the water leak other than what plaintiffs disclosed in discovery." Filing 171 at 2. That objection is sustained: the plaintiffs are directed not to present any "surprise" evidence as to another source for the water that flooded the plaintiffs' house.

7. Evidence of Second Floor Leak

The defendant objects to "[a]ny reference to a second-floor source for the water leak in Plaintiffs' dwelling, and any reference regarding the discoloration of wood shakes as a result of a second-floor source for the water leak" without the proper foundational support. Filing 171 at 2; filing 172 at 4. This objection is overruled without prejudice: the Court will take this subject up when ruling on the parties' objections to designated deposition testimony.

8. Other Complaints about Defendant

The defendant objects to "[p]rior grievances, complaints, or suits against Defendant in any manner related to other claims or actions by the plaintiffs or others." The plaintiffs do not oppose this objection, and it is sustained. *See*, *W.V. Realty, Inc. v. N. Ins. Co.*, 334 F.3d 306, 315 (3d Cir. 2003); *Jones v. Auto. Ins. Co.*, 917 F.2d 1528, 1537 (11th Cir. 1990).

9. Tibble Opinion on Repair or Reconstruction.

Defendant objects to "[t]estimony by William Tibble as to what he would have done relating to repair or reconstruction of the Plaintiffs' seasonal home." Filing 171 at 2. This objection is overruled without prejudice: the Court will take this subject up when ruling on the parties' objections to designated deposition testimony.

10. <u>Claims Practices</u>

Defendant objects to "[a]ny evidence relating to claims practices or the Unfair Insurance Claims Settlement Practices Act (or failure to comply with same)." Filing 171 at 2. The plaintiffs represent that they do not intend to present testimony or argument based on the Nebraska Unfair Insurance Claims Settlement Practices Act, Neb. Rev. Stat. §§ 44-1536 to 44-1544, but do intend to adduce evidence relating to the defendant's "property best claims practices" manual, which appear to be marked as Exhibits 41 and 42.

This objection is <u>sustained in part and overruled in part</u>: the plaintiffs may adduce evidence relating to the "best practices" manual, but not as to the Unfair Insurance Claims Settlement Practices Act.

11. <u>Defendant's Reserves</u>

The defendant objects to "[a]ny reference to whether or not the Defendant has set any reserves for this loss or any discussion of the amount of any potential reserve." Filing 171 at 2. The plaintiffs do not oppose this objection, and it is <u>sustained</u>.

12. <u>Settlement Discussions</u>

The defendant objects to "[r]eference to any settlement discussions that may have occurred between the parties, when said discussions may have occurred, or the lack of any settlement offer from Depositors." Filing 171 at 2. The defendant refers specifically to demand letters sent by plaintiffs' counsel to the defendant, marked as Exhibits 28 and 29. Filing 172 at 7.

The plaintiffs represent that although Exhibits 28 and 29 have been marked, they do not intend to actually offer them into evidence, but that they do intend to adduce evidence of the claims process, *i.e.*, that demands were made of the defendant, and the defendant's responses to those demands. With that understanding, this objection is <u>overruled</u>, but at this point, Exhibits 28 and 29 would not, if offered, be accepted into evidence.

13. <u>Comment on Redactions</u>

The defendant objects to "[a]ny reference to or comment upon any redaction contained in an exhibit, any inference to be drawn from the existence of the redaction, or any speculation as to what was redacted." Filing 171 at 2. That objection will be <u>sustained</u>.

14. <u>Evidence of Replacement Cost</u>

The defendant objects to "[a]ny evidence regarding the replacement cost of any property damaged in the water leak discovered on May 15, 2013 which has not been replaced." Filing 171 at 2. The argument on the motion

focused on evidence of the purchase price or replacement cost of personal property damaged in the flooding.

It is well-established in Nebraska that the opinion of a personal property owner is competent evidence of its value, solely because of his or her status as owner. *See*, *e.g.*, *Kristensen v. Reese*, 371 N.W.2d 319, 320 (Neb. 1985); *Jeffres v. Countryside Homes of Lincoln, Inc.*, 367 N.W.2d 728, 731 (Neb. 1985); *Borden v. Gen. Ins. Co. of Am.*, 59 N.W.2d 141, 144-45 (Neb. 1953). And the purchase price of the property is an appropriate part of the foundation for such an opinion. *See*, *Peck v. Masonic Manor Apartment Hotel*, 278 N.W.2d 589, 594 (Neb. 1979); *State v. Rush*, 275 N.W.2d 834, 836 (Neb. 1979); *Cox v. Greenlease-Lied Motors*, 277 N.W. 819, 821 (Neb. 1938); *see Meisner v. Patton Elec. Co.*, 781 F. Supp. 1432, 1446 (D. Neb. 1990).

In sum, the plaintiffs may opine as to the value of their personal property, and the purchase price or replacement cost of that property may serve as a "starting point" for that opinion. This objection is <u>overruled</u>.

15. <u>Evidence as to the Meaning of Policy Language</u>

The defendant objects to "[e]vidence regarding the meaning of any particular law or any particular provision or word contained in the insurance policy." Filing 171 at 3. This objection is <u>sustained in part and overruled in part</u>: while a layperson cannot be asked to define the terms in an insurance policy, an insurance policy claims adjuster can be asked, particularly with reference to a bad faith claim, to explain his or her understanding of what an insurance policy required.

This ruling is not meant to preclude any witness from explaining what they meant by their *own* use of a word in a document or prior testimony.

16. <u>Time to Progress to Trial</u>

The defendant objects to "[a]ny reference to the time it took for the lawsuit to progress to trial. Filing 171 at 3. The plaintiffs do not oppose this objection, and it is <u>sustained</u>.

17. <u>Reference to INSPRO as defendant's agent</u>

The defendant objects to "[a]ny reference to INSPRO as Defendant's agent or acting on behalf of Defendant, as opposed to Plaintiffs' agent or acting on behalf of Plaintiffs, for any purpose other than the receipt of the notice of loss." Filing 171 at 3. At argument on the motions, it became apparent that the purpose of the objection was to preclude any argument by the plaintiffs that representations made to them by INSPRO were, in fact, attributable by agency principles to the defendant. The plaintiffs, as the Court understands their representations, do not intend such argument.

Accordingly, on that understanding, this objection is <u>sustained</u>, and neither party shall refer to INSPRO as an agent of the defendant.

IT IS ORDERED:

1. The plaintiffs' motion in limine (filing 168) is denied without prejudice.

2. The defendant's motion in limine (filing 171) is granted in part and in part denied.

Dated this 22nd day of August, 2016.

BY THE COURT:

*[signature]*

John M. Gerrard
United States District Judge